IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ELEMENT CAPITAL MANAGEMENT LLC,  )<br>)<br>Plaintiff,  )<br>)<br>V.  )<br>)<br>ELEMENT FINANCE, INC.,  )<br>)<br>Defendant.  ) | CIVIL ACTION No. |

## COMPLAINT

Plaintiff Element Capital Management LLC ("Plaintiff" or "Element") files this Complaint against Element Finance, Inc., ("Defendant"), and in support thereof alleges the following:

### PRELIMINARY STATEMENT

1. This is a trademark infringement and unfair competition case. It arises out of Defendant's knowing appropriation of Plaintiff's ELEMENT trademark and trade name to offer financial services similar to those that Plaintiff has been offering for nearly 15 years.

2. Plaintiff is a large, established, global macro hedge fund based in New York with clients located throughout the United States and the world. Since 2007, it has used the trade name Element Capital and the trademarks ELEMENT and ELEMENT CAPITAL, among others, to identify and distinguish its financial services, including investment fund, asset management, and investment advisory services (the "ELEMENT Marks"). The ELEMENT Marks are well-established and well-known in the finance, investment fund and asset management industries throughout the country and have been for many years.

3. In addition to its common law rights in the ELEMENT Marks by virtue of its continuous use, Plaintiff also is the owner of U.S. Registration No. 3,730,034 for the mark

ELEMENT for "Venture capital funding services to emerging and start-up companies; fund investment consultations; management of a capital investment fund."

4. In late 2020 or early 2021, over a decade after Plaintiff began using the ELEMENT Marks, Defendant adopted and began providing financial services under the name Element Finance and Element. Defendant's business focus is on cryptocurrencies, tokens, and other digital assets as investment products for trading, fixed income interest rate investments, and active portfolio management. Like Plaintiff, Defendant targets investors seeking returns on their investments.

5. The claims asserted herein all arise out of and are based on Defendant's use of ELEMENT in violation of Plaintiff's right in its ELEMENT Marks. Defendant's use of the words "Element Finance" and "Element" to denote the services offered by Defendant is likely to cause confusion, mistake, and deception, and may lead the relevant public to mistakenly believe that Plaintiff is associated with, or otherwise sponsors or endorses Defendant or its business services. This is particularly troubling given that Defendant operates in the area of decentralized finance – sometimes called DeFi -- and there is the perception by the general public that DeFi businesses are more susceptible to financial misconduct as evidenced by recent well-publicized cases, as many DeFi businesses operate outside of existing regulations and the regulatory safeguards imposed by such regulations. As regulators seek to impose traditional securities regulations onto the DeFi space, these related businesses will converge within the finance industry generally, as many of the services they offer to the investing public are similar.

6. Accordingly, Plaintiff brings claims for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and related claims of trademark infringement and unfair competition under Texas common law. Plaintiff seeks to permanently enjoin Defendant from

using or claiming any rights in ELEMENT or ELEMENT marks or any confusingly similar marks as a trademark, service mark, trade name or otherwise in connection with its business in order to prevent the irreparable damage to Plaintiff's ELEMENT Marks and to the goodwill that Plaintiff has acquired in those marks, and to seek compensation for damages that already have been inflicted.

## PARTIES

7. Plaintiff Element Capital Management LLC is a Delaware limited liability company with headquarters located in New York City.

8. Defendant Element Finance Inc. is a Delaware corporation with its principal place of business located at 8528 Davis Blvd, #134-262, North Richland Hills, Texas 76182.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1338(a), as the claims relate to trademarks and arise under the Lanham Act, 15 U.S.C. §§1051–1127.  This Court also has original jurisdiction over the unfair competition claim and supplemental jurisdiction over all other related state law claims herein in accordance with 28 U.S.C. § 1338(b) and 28 U.S.C § 1367(a), respectively.

10. Venue in this district is proper under 28 U.S.C. §§ 1391(b)(l) and (2) because Defendant resides in this district and the facts giving rise to the acts or omissions alleged herein took place in part in this district.

11. Defendant is subject to personal jurisdiction in Texas because it is located in Texas, conducts substantial business in Texas, and has purposefully availed itself of the laws of Texas.

## FACTUAL ALLEGATIONS

**I.   ELEMENT CAPITAL MANAGEMENT – BUSINESS AND IP RIGHTS**

12.   Plaintiff is an investment management company that operates several investment funds commonly known as hedge funds.  Its headquarters are located in New York City.  Element began conducting its business in 2007 and has been operating continuously since then.

13.   Plaintiff has approximately 50 employees in its New York office, and another 15 in its London office.

14.   Plaintiff operates in a highly regulated environment.  It registered as an investment adviser with the U.S. Securities and Exchange Commission (the "SEC") in 2012 and registered as a commodity pool operator with the U.S. Commodity Futures Trading Commission (the "CFTC") in 2012.

15.   Plaintiff has approximately $12 billion in assets under management.  The existing and potential investors in the investment funds managed by Plaintiff are located all over the United States, including Texas, and around the world, including Canada, Europe, and Asia.

16.   Plaintiff pursues a global macroeconomic investment strategy for the investment funds it manages.  Pursuant to that strategy, Plaintiff invests in a wide variety of securities, commodities, derivatives, and other investment products including cryptocurrencies.

17.   Plaintiff's reputation with investors is a key component in its ability to maintain and raise additional assets for management.  Plaintiff has earned a reputation as one of the top performing hedge funds in the world, and has been recognized as a top firm in the asset management industry and has received numerous awards and accolades, including being (a) listed among *Barron's* (a widely distributed, prominent financial publication) annual Top 100 Hedge Funds list eight times since 2011, (b) awarded 2020 "Macro Hedge Fund of the Year" by *Institution*

*Investor* (a prominent finance industry publication), (c) ranked number 10 in a 2019 "Top 60 Hedge Funds Ranking" by 5-Year Annualized Net Returns by the *Wall Street Journal*, (d) awarded 2018 "Fund of the Year" by *Absolute Return* (a prominent finance industry publication) and (e) named a "Best Place to Work in Money Management" by *Pension & Investments* (a prominent finance industry publication) every year since 2019.

18. For more than a decade prior to 2021, when Defendant first began using Element as a tradename and service mark, Plaintiff has advertised and provided the public information about its business at its website located at the URL www.elementcapital.com. In addition, since 2012, significant information about Plaintiff has been readily available to the public on the SEC's Investment Adviser Public Disclosure website located at www.adviserinfo.sec.gov. Plaintiff also maintains a LinkedIn page at www.linkedin.com/company/element-capital-management/mycompany/ to provide information about its business to the relevant public. There also is a Wikipedia page at en.wikipedia.org/wiki/Element_Capital_Management, that includes links to 38 articles published in widely distributed financial publications referencing Plaintiff.

19. In addition, since at least 2007, Plaintiff has periodically distributed newsletters to the investors and prospective investors in the investment funds it manages, containing information relevant to these investment funds and containing its views and research on macroeconomic topics and other investment industry matters.

20. Plaintiff has expended substantial time and effort in the development and protection of its valuable ELEMENT Marks and the ELEMENT Marks are well-established and well-known, especially in the finance, investment fund, and asset management industries.

21. Since 2007, Plaintiff has continuously used and developed common law trademark rights in the ELEMENT Marks in conjunction with its financial services including

investment advisory, fund management, and asset management services.

22. Plaintiff uses the names ELEMENT and ELEMENT CAPTIAL interchangeably. Financial publications and investors in Plaintiff's funds use both ELEMENT and ELEMENT CAPITAL to refer to and identify Plaintiff. By virtue of Plaintiff's use of ELEMENT Marks to refer to itself and its services and use of the marks by the investment community and the press, the ELEMENT Marks when used in connection with fund management, fund names, financial services, asset management services, and investment advisory services are associated exclusively with Plaintiff.

23. Plaintiff has built up strong rights in the ELEMENT Marks, has acquired goodwill in the ELEMENT Marks, and the ELEMENT Marks are significant assets of the company.

24. In addition to its common law rights based on use of the ELEMENT Marks since 2007, Plaintiff is the owner of U.S. Trademark Registration No. 3,730,034 for the mark ELEMENT for "Venture capital funding services to emerging and start-up companies; fund investment consultations; management of a capital investment fund" in International Class 36, which issued in 2009. The registration is valid, subsisting, and in full force and effect, has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serves as conclusive evidence of the validity of the registered mark, of the registration of the mark, and of Plaintiff's exclusive right to use the mark in commerce on or in connection with the services for which the mark is registered on the Principal Register, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

25. Plaintiff has diligently enforced its trademark rights in the ELEMENT Marks including sending demand letters to third parties who make unauthorized use of the ELEMENT marks for financial services and has been successful in obtaining agreements to cease use of the

ELEMENT Marks.

26. Plaintiff's ELEMENT Marks were in use and Plaintiff had acquired common law rights in and to the ELEMENT Marks long before Defendant commenced the unlawful activities described in this Complaint.

**II.    DEFENDANT HAS INFRINGED ON PLAINTIFF'S MARKS**

27. Defendant began operations in late 2020 or early 2021.  According to the information available on its website, https://element.fi, Defendant is in the decentralized finance industry, often referred to as DeFi.  DeFi is a blockchain-based financial system that allows users to access financial services and products, primarily cryptocurrencies, without traditional highly-regulated intermediaries such as banks or brokerages.

28. Defendant provides its users tools and services to help them manage, trade, grow and analyze their digital assets, including offering portfolio management, a decentralized exchange, and trading bots that customers can use to trade their digital assets.

29. On the home page of its website, Defendant claims its customers can "Grow your savings" by purchasing Element Principal Tokens.  According to the website, "When you purchase Element Principal Tokens, you receive a fixed rate token that your buy and hold until the day  of the term end date.  Once this term has ended, you have the ability to redeem your token and earned APR."

30. One of the primary services offered by Defendant is a fixed-rate investment strategy known as yield-farming or yield services.  As described in Defendant's Terms of Service, (which Defendant also calls the "Element Licenses", Exhibit A at 10), the yield services offered by Defendant "enable users to split yield generating positions of Tokens in a principal Token and yield-bearing Token in order to support a high fixed yield market."  Ex. A at 3.  What this means

is that a customer can deposit a digital asset such as the crypto-currency Ethereum with Defendant for a set period of time. In exchange they receive the cryptocurrency back along with additional cryptocurrency at a previously determined fixed rate.

31. To support these services, Defendant "developed and deployed" what it calls the Element Protocol. The Element Protocol is "software that splits yield generating positions of digital assets to third-party decentralized protocols." Ex. A at 2.

32. Defendant also calls its website the Element Platform, "which includes, for certainty, Element's decentralized application layer on the Ethereum Blockchain, the [Element] Protocol and the Element governance portal (the "Governance Site"), and the Element NFT portal (the "NFT site")."

33. Another service provided by Defendant is "Governance Site." The Element governance portal, or "Governance Site," is described in the Terms of Service as: "ELFI (the "Element Governance Token") is a ERC-20 governance token used that enables Element Governance Token holders to collectively govern rules of use over and other components and operations of the [Element] Protocol." Ex. A at 3.

34. Another Service provided by Defendant is "NFT Site." The Element NFT Portal, or "NFT Site," is described in the Terms of Service as:

> For certain qualifying users of the Platform and Services, you are permitted to mint non-fungible tokens through the NFT Site ("ELF NFTs"). This functionality is referred to as the "NFT Service." We do not charge you for NFT Services, but you will need to cover Ethereum Gas Charges (see below) incurred in connection with minting each ELF NFT. When you acquire an ELF NFT and for so long as you continue to be the recorded owner of the ELF NFT in the relevant blockchain, you receive (i) ownership of the NFT digital file, (ii) the right to use the underlying image content in the ELF NFTs, pursuant to a Creative Commons Attribution 4.0 International license and (iii) the right to sell, gift, donate, or otherwise transfer the ELF NFT as a digital file. The same rights and restrictions follow each subsequent transfer.

Ex. A at 3.

35. Upon information and belief, Defendant also provides asset-backed loans and other financial services.

36. Defendant asserts that it "owns the Platform and Services, including all technology, content and other materials used, displayed or provided on the Platform or in connection with the Services (including all intellectual property rights subsisting therein)." Ex. A at 10.

37. While Plaintiff operates in the traditional regulated financial industry, and Defendant operates in the area of DeFi which uses its own terms, concepts, and vocabulary, at their core both Plaintiff and Defendant operate similar businesses and are competitors. Plaintiff, like Defendant, is an active participant in fixed income markets, and has also invested in cryptocurrencies. In addition, like Plaintiff, Defendant solicits customers from all over the country. Investors look to both Plaintiff and Defendant to help them generate returns on their investments.

38. Defendant's website and social media posts also evidence that in addition to the business that Defendant already runs, it has plans to expand into other aspects of the finance business.

39. To promote its business, defendant uses the names "Element Finance," "Element Protocol," "Element Fi," and "Element." Defendant's website describes how investing using the "Element Fi services" can grow savings using fixed rate investments, "Element principal pools," and other investment tools that are provided by Defendant. Defendant offers its services to both individual investors, as well as to companies and specifically promotes itself as "the perfect treasury diversification solution" to grow capital for a company and offers treasury management advisory services.

40. In addition to promoting its services at *element.fi*, Defendant markets and promotes itself under the "Element Finance" name on various social media platforms including Twitter, Discord, LinkedIn, Github and You Tube.

41. Defendant is not related to or affiliated with Plaintiff in any way. Defendant has not sought or received any license or authorization from Plaintiff for any purpose whatsoever, including for the acts described herein.

42. In its terms of service, Defendant claims trademark rights in its Element branded products and services. Specifically:

> Any of Element's product or service names, logos, and other marks used in the Platform or as a part of the Services, including Element's name and logo are trademarks owned by Element, its Affiliates or its applicable licensors. As between you and us, all goodwill symbolized by those marks belong exclusively to us. You may not copy, imitate or use those marks without Element's (or the applicable licensor's) prior written consent.

Ex. A at 10.

43. Notably, Defendant's terms of service prohibit its users from "infring[ing] on or misappropriate[ing] any contract, intellectual property or other third-party right, or commit a tort while using the Platform of the Services." Ex. A at 5.

44. Upon learning of Defendant's infringing use of Plaintiff's mark, Plaintiff demanded that Defendant cease and desist from using Plaintiff's ELEMENT Marks for any purpose. Plaintiff offered to resolve this matter, and in furtherance thereof provided Defendant with a draft settlement agreement, and engaged in various telephonic and email communications with the goal towards reaching an amicable resolution. Specifically, Plaintiff gave Defendant ample time to provide feedback on the draft settlement agreement, identify those uses of Plaintiff's marks that Defendant asserts could not be changed, and provide a reason why. Defendant has opted not to provide that information or feedback to Plaintiff, and instead has continued to intentionally

use and infringe upon Plaintiff's marks.

45. Upon information and belief, at the time that Defendant adopted the ELEMENT mark, Defendant was on notice of Plaintiff's use of and rights in the ELEMENT Marks given Plaintiff's long use of the ELEMENT Marks, its award and industry recognition, the articles and press it has received, and that fact that for many years prior to Defendant's first use of ELEMENT for financial services, Plaintiff had been soliciting investors, including investors in the State of Texas.

46. Defendant's use of the marks ELEMENT and ELEMENT FINANCE is likely to cause confusion, mistake, deception among the relevant public, and may lead the public to believe mistakenly that Defendant is in some way associated with, or is otherwise sponsored or endorsed by or affiliated with Plaintiff. This is particularly troubling given that Defendant operates in the area of decentralized finance – sometimes called DeFi, and there is the perception by the general public that DeFi businesses are more susceptible to financial misconduct as evidenced by recent well-publicized cases, as many DeFi businesses operate outside of existing regulations and the regulatory safeguards imposed by such regulations. As regulators seek to impose traditional securities regulations onto the DeFi space, these related businesses will converge within the finance industry generally, as many of the services they offer to the investing public are similar.

47. Defendant's use of Element and Element Finance is inconsistent with Plaintiff's prior use and registered trademark rights and has caused, and will continue to cause, irreparable harm to Plaintiff.

48. Upon information and belief, Defendant will continue to use the ELEMENT name and mark for its financial services unless otherwise restrained by the Court.

49. Plaintiff has standing to bring this action.

50. Plaintiff has no adequate remedy at law.

## CAUSES OF ACTION

### First Cause of Action - Trademark Infringement Pursuant to Lanham Act

51. Plaintiff realleges and incorporates the allegations set forth above in Paragraphs 1 through 50, inclusive, as if fully set forth herein.

52. Plaintiff owns U.S. trademark registration No. 3,730,034 for the mark ELEMENT for "Venture capital funding services to emerging and start-up companies; fund investment consultations; management of a capital investment fund" in International Class 36, based on a claim of first use of February, 2005 and first use in commerce of February, 2008, which registration issued December 22, 2009. Plaintiff's Mark is incontestable.

53. Defendant uses the confusingly similar trademarks ELEMENT and ELEMENT FINANCE for financial services related to those offered by Plaintiff and offered to similar investors.

54. By virtue of Plaintiff's undisputed prior rights in the ELEMENT Marks and its registration therefor, the similarity in the parties' marks, the overlap in the parties' services and consumers, and Defendant's actual or constructive notice of Plaintiff's prior rights, Defendant's use of the marks ELEMENT and ELEMENT FINANCE is likely to cause and will continue to cause confusion or mistake among the relevant public, or is likely to deceive consumers into believing that Defendant or its services are affiliated with, authorized by, sponsored by, approved by, endorsed by, or otherwise connected with Plaintiff or its services or funds.

55. Defendant's acts constitute trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

56. Defendant's conduct has caused, and unless enjoined by this Court, will continue

to cause, Plaintiff to sustain irreparable damage, loss, and injury, for which Plaintiff has no adequate remedy at law.

57. Plaintiff is entitled to injunctive relief and to recover Plaintiff's damages, Defendant's profits, punitive damages, costs, and reasonable attorney's fees.

**Second Cause Of Action - Federal Unfair Competition under 15 U.S.C. §1125(a))**

58. Plaintiff realleges and incorporates the allegations set forth above in Paragraphs 1 through 57, inclusive, as if fully set forth herein.

59. Defendant's use of the ELEMENT and ELEMENT FINANCE as its trade name and trademark constitutes use in commerce of a word, name or device and false designation of origin, that is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendant with Plaintiff or as to the origin, sponsorship or approval of the Defendant's goods or services in violation of 15 U.S.C. §1125.

60. As a result of Defendant's wrongful conduct, Plaintiff has been damaged in an amount to be determined according to proof at trial.

61. Defendant's conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiff to sustain irreparable damage, loss, and injury, for which Plaintiff has no adequate remedy at law.

62. Plaintiff is entitled to injunctive relief and to recover Plaintiff's damages, Defendant's profits, punitive damages, costs, and reasonable attorney fees.

**Third Cause of Action - Common Law Trademark Infringement**

63. Plaintiff realleges and incorporates the allegations set forth above in Paragraphs 1 through 62, inclusive, as if fully set forth herein.

64. Defendant's use of Plaintiff's ELEMENT Marks as part of Defendant's trademarks and trade names, including Defendant's use of ELEMENT and ELEMENT FINANCE constitutes

common law trademark infringement because it is likely to cause consumer confusion as to the origin, sponsorship, or affiliation of the infringing financial services by creating the false and misleading impression that the infringing services are authorized by or associated with Plaintiff.

65. Plaintiff's trademarks are entitled to protection under the common law. Plaintiff has extensively and continuously promoted and used its trademarks in the United States and the State of Texas. Through that extensive and continuous use, Plaintiff's trademarks have become well-known indicators of the origin and quality of Plaintiff's services.

66. Defendant's use of Plaintiff's trademarks has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff.

67. Defendant's use of Plaintiff's trademarks has been intentional, willful, and malicious. Upon information and belief, Defendant knew of Plaintiff's use of the ELEMENT Marks yet used them anyway. Defendant's bad faith is evidenced at least by Defendant's unlawful use of Plaintiff's ELEMENT Marks and by Defendant's continuing disregard for Plaintiff's rights after receiving Plaintiff's cease and desist letter.

68. Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiff to sustain irreparable damage, loss, and injury, for which Plaintiff has no adequate remedy at law.

69. Plaintiff is entitled to injunctive relief and to recover Plaintiff's damages, Defendant's profits, punitive damages, costs, and reasonable attorney fees.

### Fourth Cause of Action - Common Law Unfair Competition

70. Plaintiff realleges and incorporates the allegations set forth above in Paragraphs 1 through 69, inclusive, as if fully set forth herein.

71. Defendant's promotion, offering and provision of financial services in direct competition with Plaintiff, under the ELEMENT and ELEMENT FINANCE names and marks constitute common law unfair competition. Defendant's use of Plaintiff ELEMENT Marks for financial services, is likely to cause consumer confusion as to the origin, sponsorship, or affiliation of Defendant's services by creating the false and misleading impression that Defendant's services under the ELEMENT mark are authorized by or otherwise associated with Plaintiff.

72. Plaintiff's trademarks are entitled to protection under the common law. Plaintiff has extensively and continuously promoted and used its trademarks in the United States and the State of Texas. Through that extensive and continuous use, Plaintiff's trademarks have become well-known indicators of the origin and quality of Plaintiff's services.

73. Defendant's use of Plaintiff's trademarks has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which it has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's trademarks and services.

74. Defendant's use of Plaintiff's trademarks has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by Defendant's unlawful use of Element's trademarks and by Defendant's continuing disregard for Plaintiff's rights after receiving Plaintiff's cease and desist letter.

75. Defendant's conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiff to sustain irreparable damage, loss, and injury, for which Plaintiff has no adequate remedy at law.

76. Plaintiff is entitled to injunctive relief and to recover Plaintiff's damages, Defendant's profits, punitive damages, costs, and reasonable attorney fees.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all triable issues alleged in this Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Element Capital Management respectfully prays that this Court enter judgment as follows:

1. Permanently enjoining and restraining Defendant, and any of its agents, servants, employees, successors, and assigns and all those in active concert or participation with any of them who receive notice of judgment from:

    (a) Imitating, copying, or making unauthorized use of the ELEMENT Marks or from using ELEMENT or any confusingly similar mark for or in connection with the provision of any financial services including in or as part of any trademark, trade name, company name, business name, corporate name, partnership name, general partner name, fund name, domain name, URL, social media username/account name/handle, social media avatar, hashtag, metadata, AdWord, email address, website name or otherwise, and whether or not the uses are visible or in source code or meta data or are intended to generate any search results or sponsored ads or any uses as a key word, ad word, optimized search term, in or for purposes of search engine optimization, or otherwise to influence search results on any search engine;

    (b) Using any false designation of origin or false description or performing any act that can or is likely to lead members of the trade or public to believe that Defendant is associated with Plaintiff or that any service provided or offered or sponsored or managed by Defendant is in any manner associated or connected with Plaintiff, is sponsored or endorsed by Plaintiff, or is authorized, licensed, or otherwise approved by Plaintiff;

    (c) Registering, applying to register, or maintaining in the Unites States Patent

and Trademark Office or any state trademark registry any application for registration or registration for any mark that includes ELEMENT for any financial services;

  (d) Engaging in any other activity constituting unfair competition with Plaintiff, or constituting an infringement of the ELEMENT Marks; and

  (e) Assisting or authorizing any third party to engage in any of the actions prohibited by subparagraphs (a)–(d) above, inclusive.

  2. Directing that Defendant take all action to change any business name, social media names, and social media designations including any URL that includes the term ELEMENT to a name or designation that does not include ELEMENT.

  3. Directing that Defendant file with the Court and serve upon Plaintiff, within thirty (30) days of the entry of injunction prayed for herein, a written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which it has complied with the permanent injunction.

  4. Granting Plaintiff all damages sustained as a result of Defendant's unlawful activities described above, together with appropriate interest thereon and that such sums be trebled pursuant to 15 U.S.C. § 1117.

  5. Granting Plaintiff all the gains, profits, savings, and advantages realized by Defendant from its unlawful actions described above pursuant to 15 U.S.C. § 1117.

  6. Granting Plaintiff punitive damages.

  7. Granting Plaintiff their full costs, including, as part of such costs, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

  8. Granting Plaintiff both pre-judgment and post-judgment interest on each and every monetary award.

9. Granting Plaintiff such other and further relief as the Court may consider equitable, just, and proper.

Dated:   March  27, 2023

Respectfully submitted,

/s/ *Joseph F. Cleveland, Jr.*
Joseph F. Cleveland, Jr.
BRACKETT & ELLIS, P.C.
100 Main Street
Fort Worth, TX 76102-3090
Phone: (817) 339-2454
jcleveland@belaw.com

Steven Barentzen (pending pro hac vice)
LAW OFFICE OF STEVEN BARENTZEN
1750 K Street, NW, Suite 700
Washington DC, 20006
Office Phone:  (202) 289-4333
Cell Phone:     (917) 476-0953
Steven@Barentzenlaw.com

COUNSEL FOR ELEMENT
CAPITAL MANAGEMENT LLC